Nevius, J.
The declaration contains four counts, the
First alleges, that the plaintiff on the 1st of May, 1832, was seized of a tract of land of one hundred acres, through which, the Raritan and Millstone rivers from time immemorial had been accustomed to flow ; that the defendants maliciously filled up and obstructed, narrowed and hindered the free passage of said river below and opposite said lands, and caused the water to run with violence upon and over said lands, wearing away the soil and destroying the crops &c.
The second count varies from the first only, in alleging this injury as done to the possession of the plaintiff.
The third count charges the injury to be done to the property, by means of a dam, erected by the defendants, across the Raritan river, below the lands in question; and the
Fourth charges an injury to the possession, from the same act of erecting a dam.
The defendants, after pleading the general issue, justify the acts complained of, by four distinct pleas; each of them reciting an act of the legislature of New Jersey, of the 4th of February, 1830, incorporating them with authority to construct a canal from the Delaware to the Raritan river, and to improve the navigation of said rivers below the junction of said canal, to construct locks, works and devices necessary for the use of the canal, and to enter upon all lands, waters and streams, subject to compensation in the mode thereby provided. Under this act, in the said several pleas, they justify the wrong complained of, with the following averments, to wit: That in all things, they complied with said act, and became an incorporated company, and entitled to the powers and privileges granted by said act; that they constructed the canal in the most prudent and skillful manner as a public highway, without designing to injure the property of the plaintiff. That the Raritan river is a public highway, belonging to the people of New Jersey ; that its navigation has been improved by the construction of the canal. That the plaintiff’s lands are not on the route of the canal, but on the opposite side of the river and beyond the back water occasioned by the dam. That the acts complained of are lawful acts, and that the injury is remote and consequential, arising from a public improvement and common to a large class of the community. That they did. *202 to the plaintiff’s land, no unnecessary damage; that the supposed wrongs were committed by them as corporators of said corporation, by virtue of said act; that the plaintiff never claimed remuneration for the damage done him, within twelve months from the time of such damage sustained. That they did not enter upon the plaintiff’s lands, and that the acts complained of are remote and consequential and done by them in making a public improvement. This is substantially the defence contained in these four pleas; and to these, the plaintiff has filed a general demurrer.
This demurrer admits, that the acts complained of were done by the defendants in pursuance of legislative authority, but denies that that constitutes any legal defence to the plaintiff’s claim for damages resulting from such acts. As the questions raised by this demurrer, are in themselves of much importance, and are daily becoming more so, as the system of internal improvements by rail roads and canals, is advancing; they deserve the closest examination and most serious deliberation and solemn decision of this court. It is proper therefore, to define in the out-set, the precise situation of these parties, and the claims which they respectively advance in-their pleadings. From these we learn, that the plaintiff is the owner and occupier of lands through or along which, the rivers Millstone and Raritan have been accustomed to flow, each in an ancient and accustomed channel, from time immemorial. That the defendants by means of embankments below these lands, have narrowed thestream and hindered and obstructed the free and natural flow of their waters, and by means of a dam erected still lower down on the river Raritan, have caused the water to flow back; by means of which acts, he alleges and charges that his soil is washed away and his crops destroyed. The plea admits the truth of these allegations, but justifies the acts by authority of the legislature of this state, and insists that the plaintiff has no lawful claim against them the defendants, for damages.
The plaintiff as the owner of these lands, has a clear legal right to the advantages of these streams of water in their ordinary and natural flow, which right cannot be impaired or destroyed by any person natural or artificial, without a corresponding obligation on their part to respond in damages'for the injury committed by such interference. He holds this right subject only to the paramount sovereign authority of the govern *203 ment under which he lives, and even that authority is not wholly unrestricted. For upon principles of natural justice and equity, upon which are based all systems of civil government, and without which, no government can or ought to endure; this right cannot be taken and appropriated, impaired or destroyed, without compensation. I do not mean to be understood, that the government can legally and constitutionally do no act, nor permit another to do an act, which may in its consequences, impair the value of that right, without compensation; but I mean to say, that the government itself, for public purposes even, cannot take away or destroy the right itself, without making compensation to the owner. The State may by virtue of its right of eminent domain, take private property or destroy private rights, for public purposes, upon making just compensation • but cannot do this for private purposes, without the consent of the owner. The defendants rely mainly upon the position, that the work authoiized by their charter, is a public work, designed for public purposes, and in the execution of this work, they acted as public agents and in behalf of the State, and therefore insist, that for these acts done in pursuance of law, the plaintiff is not entitled to recover damages. The plaintiff’s right to compensation for the injuries complained of, does not depend in any wise upon the fact, that this is a public work; but the mode of enforcing that right does depend upon it. For if the defendants are to be esteemed as public agents, the remedy cannot be against them, but only by an appeal to the justice of the legislature who directed the act. It is important therefore, to determine the character in which the defendants have done the acts complained of. They admit, that the injuries charged were committed by them as corporators of the corporation chartered by the act of 4th February, 1830. But they ’are certainly not a public corporation. Public corporations are political corporations or such as are founded wholly for public purposes and the whole interest in which, is in the public. The fact of the public having an interest in the works or the property or the object of a corporation, does not make it a public corporation. All corporations, whether public or private, are in contemplation of law, founded upon the principle, that they will promote the interest or convenience of the public. A bank is a private corporation, yet it is in the eye of the law, designed for *204 public benefit. A turnpike or canal company is a private company, yet the public have an interest in the use of their works, subject to such tolls and restrictions as the charter has imposed. The interest therefore, which the public may have in the property or the objects of a corporation, whether direct or incidental (unless it has the whole interest) does not determine its character as a public or private incorporation. In the present case, whatever may have been the objects of the corporation, whether to erect a public navigable highway, or to.improve the navigation of the Raritan river, or whether the public have a right to the use and enjoyment of these improvements when made or not, the company are essentially a private company and are not the agents of the state. Their works are not constructed by the requirement of the state, nor at the expense of the state, nor does the stock belong to the state, nor is the state answerable for the lands or materials used in the construction of these works, or responsible for the debts of the company, or for injuries committed by them in the execution of their work. The state could not compel the company to construct this canal or improve the navigation of the river; it has permitted them to do so at their own request. The company might have abandoned the work whenever they saw fit, they may now abandon it without responsibility to the state. In all they have done, they have sought their own interest and if thereby they have incidentally promoted that of the public, it cannot reasonably be supposed it was from a liberality beyond that of their fellow citizens or for the sake of the public. The corporation itself, the property of the corporation, the object of the corporation, are essentially private, subject only to public use, under their own restrictions, and from which use, the company are to derive their profits. The whole scope of their charter indicates clearly, that the legislature did not intend to interfere with private and vested rights, without providing a recompense to be paid by the company and not by the state. And if injury or damage has accrued to the private property of rights of others which could not be foreseen or anticipated and therefore not provided for in the charter of the company, this constitutes no reason why the party thus injured should not be compensated. I am of opinion, that the defendants are a private company, and *205 that the law under which they committed the acts complained of is no defence in the present action.
But it is urged, that the injury complained of, is remote and consequential and common to a large class of the community, and therefore the defendants are not to respond in damages. I do not see the force of this answer. I admit, that in the construction of the canal and in the improvement of the navigation of the river, certain private property and private rights may be materially affected in value, such as withdrawing the business of transportation from its former channel, affecting the good will and custom of established stands for the purchase and sale of merchandise and produce, and in many respects changing the whole course and kind of business of a neighborhood, for which, the parties whose rights are so affected, can have no remedy by suit at law. But this is a case of every day’s occurrence with individuals as well as corporations. The opening a new store, or tavern, a lawyer’s or physician’s office, may materially affect the income and profits of such as was there before, but this can be no more than a damnum absque injuria, and no damages can be recovered. But the present case as presented by the pleadings, differs materially from those. Suppose that by narrowing this river, diverting its course or obstructing its passage by a dam, the whole farm of the plaintiff should be overflowed and destroyed; can any one deny his right to compensation, and if he would be entitled to compensation for a destruction of the whole, is he not entitled to recompense for a destruction of, or injury to a part?
But it is further insisted upon by these pleas, that the plaintiff cannot maintain this action, because he made no demand of the defendants within twelve months after the injury sustained. I find no provision in the act requiring him to do so, and am of opinion, the demurrer should be sustained.
■ Horublower, C. J. and White, J. concurred. Ford, J. absent.

Demurrer sustained.

Cited in Brearly v. Del. & Rar. Can. Co., Spencer 236; American Print Works v. Lawrence, 1 Zab. 260; Del. & Bar. Can. Co. v. Lee, 2 Zab. 247, 250; Gough v. Bell, Id. 474; Amer. Print Works v. Lawrence, 3 Zab. 600, 601; Steph. & Con. Tr. Co. v. Cent. R. R. Co., 4 Vr. 235; Tinsman v. Bel. Del. R. R. Co., 2 Dutch, 160; Trenton Wat. Power Co. v. Raff, 7 Vr. 343; Trenton Wat. Pow. Co. v. Chambers, 2 Beas. 200; Same case, 4 Harr. 5.